**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| VALERO ENERGY CORPORATION in its own right and as successor to ULTRAMAR DIAMOND SHAMROCK CORPORATION, | § § § § § | |
| *Petitioner*, | § § | Civil Action No.  SA-06-CV-1065-XR Consolidated with |
| v. | § § | Civil Action No. SA-08-CV-114-XR and Civil Action No. SA-08-MC-149-XR |
| UNITED STATES OF AMERICA, | § § | |
| *Respondent*. | § | |

## ORDER

On this day, the Court considered the briefs of the parties regarding Petitioner's objections to the breadth and scope of the summonses issued by the Respondent pursuant to 26 U.S.C. § 7609(b)(2)(C) and whether Petitioner is entitled to depose Respondent's Internal Revenue Service Agent.  (Docket Entry Nos. 39, 40, 42, 43, 44, 46).  Respondent has issued summonses to third parties for the production of documents to determine the federal income tax liabilities of Petitioner and its subsidiaries for the periods ending on December 31, 2002, and December 31, 2003.  The parties address whether Petitioner's objections to the breadth and scope of the summonses are barred by collateral estoppel.  Petitioner has sought to quash the three summonses and Respondent has sought to enforce them.  Having considered the parties' briefs, their attached evidence, and the relevant authority, the Court rules that collateral estoppel applies to petitioner's objections to the breadth and scope of the summonses and that Petitioner is not entitled to depose Respondent's revenue agent.

**Background**

Petitioner Valero Energy Corporation ("Valero") is a Delaware corporation with its headquarters in Texas.  The company owns and operates multiple refineries and markets refined oil and gas products.  One such refinery is located in Canada and was previously owned by Ultramar Diamond Shamrock ("Diamond Shamrock").  On December 31, 2001, Diamond Shamrock merged into Valero.  Effective on the date of the 2001 merger between Valero and Diamond Shamrock, the Canadian refinery began marketing refined products in Canada.  Valero alleges that it sought and obtained tax advice from Ernst & Young and Arthur Andersen in connection with various aspects of the restructuring of the Canadian entities and the repayment of certain third-party debt by one of those entities.

In 2002, large foreign currency losses resulted from these transactions, which is the focus of the Internal Revenue Service's ("IRS") examination of Valero's 2002 and 2003 federal income tax liabilities.  The IRS issued summonses to three accounting firms used by Valero: Arthur Andersen ("Andersen"), Ernst & Young ("E&Y"), and Deloitte and Touche ("Deloitte"), and subsequently issued a summons to Valero.

*The IRS Summons to Ernst & Young and Civil Action No. SA-06-CV-1065*

In its summons to E&Y, the IRS seeks:

> All documents . . . related to, or reflecting, tax planning, tax research, or tax analysis, by or for, Ultramar Diamond Shamrock (including any of its subsidiaries or partnerships, both domestic and foreign) and Valero Energy Corporation (including any of its subsidiaries or partnerships, both domestic and foreign) in connection with their 2001, 2002 and 2003 Canadian and U.S. income taxes, including, but not limited to:
>
> 1.      any Canadian restructuring or refinancing during the years

2

2001, 2002 and 2003;

2.  any distribution by Ultramar Limited (formerly known as Ultramar Canada Inc.) in 2001, 2002 or 2003, as well as any other Canadian and U.S. tax issues associated with such distribution;

3.  any transfer of property, remittance, dividend or loan payment by Canadian Ultramar Company ... or Ultramar Credit Corporation during 2001, 2002 or 2003 as well as any other Canadian and U.S. tax issues associated with such transfers;

4.  any overall foreign losses (OFLs) including methodologies used to maximum the tax benefits of such OFLs;

5.  documents involving I.R.C. Section 987;

6.  documents involving I.R.C. Section 988;

7.  documents involving I.R.C. Section 1503;

8.  any transfer of Canadian Ultramar Company or Canadian Ultramar Canada to a new Cayman Islands corporation and any subsequent change(s) in the residence, form, or ownership of the entity, specifically including re-incorporation in Delaware;

9.  the use of a stapled stock structure to prevent build-up of overall foreign losses (OFLs);

10.  the transfer of shares of Ultramar Credit Corporation in 2002;

11.  the use of any check-the-box election during the period of January 1, 1992 through December 31, 2003.

12.  all other planning, research or analysis in which Arthur Andersen played any role or provided any services.[1]

Valero, as a third party, challenged the summons issued to E&Y.  *Valero Energy Corp. v. United States*, No. SA-06-CV-1065 (W.D. Tex. originally filed Dec. 6, 2006).  Valero objected to the summons, arguing:  (1) E&Y did not provide information, advice or assistance to Valero or Diamond Shamrock in connection with the preparation of the tax returns for 2001, 2002 and 2003; therefore, E&Y does not have any documents responsive to the summons.  (2) The summons seeks documents which contain confidential communications made to or from Valero and/or Diamond Shamrock for purposes of obtaining or giving tax advice such that the documents are privileged

---

[1]Pet. to Quash [E&Y] Summons, Ex. A, Dec. 6, 2006 (Docket Entry No. 1).

pursuant to 26 U.S.C. § 7525(a)(3)(A), (B).  (3) The summons requests documents that are protected

by the attorney-client or work-product privilege.   (4) The summons is vague, overly broad and

irrelevant in that: (a) the summons seeks documents related to the 2001, 2002 and 2003 tax returns,

but the only years under examination by the IRS, as apparent on the face of the summons, are 2002

and 2003; (b) the summons seeks information in connection with Canadian tax returns and Canadian

tax issues which are not subject to examination by the IRS; (c) the term "tax" is not defined and

conceivably could be construed to include items not related to federal income tax returns, including

customs, excise, sales, franchise, employment, state income, and provincial taxes and the like; (d)

the terms "research and analysis" are not qualified by the word "tax" and thus are vague and overly

broad; and (e) the summons seeks "check-the-box" information for years beginning as early as 1992.[2]

*The IRS Summons to Deloitte and Touche and Civil Action No. SA-08-CV-114*

Valero challenged the summons issued to Deloitte in the Southern District of Texas, but that

case was transferred to this district.  *Valero Energy Corp. v. United States*, No. SA-08-CV-114

(W.D. Tex.).[3]  With slight exceptions, the Deloitte summons is identical to the E&Y summons.[4]

---

[2]Pet. to Quash [E&Y] Summons 2–4, Dec. 6, 2006 (Docket Entry No. 1).

[3]This case was originally filed in the Southern District of Texas styled as *Valero Energy Corporation v. United States*, No. H-07-1544 (S.D. Tex. filed May 8, 2007).  The Southern District of Texas transferred this case to the Western District of Texas upon a joint motion of the parties, who argued that Deloitte maintained an office in San Antonio, the transfer was convenient for the parties, and a transfer was in the interest of justice.  *See* [Deloitte] Order, Feb. 8, 2008 (Docket Entry No. 19).

[4]Where the E&Y summons seeks from E&Y "[a]ll documents . . . related to, or reflecting tax planning, research or analysis," the Deloitte summons seeks from Deloitte "[a]ll documents . . . related to, or reflecting, tax planning, *tax* research, or *tax* analysis . . . ."  *Compare* Pet. to Quash [E&Y] Summons, Ex. A. (regarding request sent to E&Y) *with* Pet. to Quash [Deloitte] Summons, Ex. A (regarding request sent to Deloitte) (emphasis added).  A similar change is made in the twelfth request.  *Compare* Pet. to Quash [E&Y] Summons, Ex. A ("all other planning, research or analysis

Valero alleges in the petition that it engaged Deloitte in 2003 to review the Canadian restructuring and refinancing to provide tax advice to assist Valero's employees in understanding the tax results of the transactions. Valero states that Deloitte also reviewed certain calculations in connection with the Canadian restructuring and filing and disclosure issues, and that Deloitte's findings, which constitute privileged tax advice, were shared with Valero.

Valero again asserts that attorney-client, federal tax practitioner, and work-product privileges prevent the disclosure of some documents. Valero also claims that the summons requested vague, overly broad and irrelevant information in that the summons requests potentially all documents related to 2001, 2002 and 2003 "income taxes" when transactions which were consummated in 2002 are the only ones under examination, the summons seeks information related to Canadian tax returns and issues not subject to examination by the IRS, the summons seeks "check-the-box" information for years beginning as early as 1992, and the IRS seeks "all *other* tax planning, tax research, or tax analysis in which Deloite ... *played any role or provided any services*." Valero also requested that Deloitte provide responsive documents to Valero so that Valero may conduct a privilege review prior to production.

*The IRS Summons to Valero and Civil Action No. SA-08-MC-149*

Subsequently, in a third action, the United States filed a Petition for Enforcement of an IRS Summons, seeking an order enforcing a lengthy IRS summons issued to and served on Valero. *United States v. Valero Energy Corp.*, No. SA-08-MC-149 (W.D. Tex. filed Feb. 25, 2008). The Valero Summons appears to relate at least in part to the investigations that are the subject of the

_____

in which [E&Y] played a role or provided any services"), *with* Pet. to Quash [Deloitte] Summons, Ex. A ("all other tax planning, tax research, or tax analysis in which Deloitte Tax LLP played any role or provided any services.").

E&Y and Deloitte summonses; however, the Valero summons requests extensive information from Valero and the requests are not similar in wording to the E&Y and Deloitte summonses.[5]

The United States complained in the petition that Valero produced some requested documents but withheld numerous other documents and did not provide any requested testimony. Rather, Valero delivered a written response and objections to the Valero summons. The United States believes Valero interpreted the Valero summons too narrowly; thereby, failing to produce responsive documents. The United States argues that Valero also withheld documents pursuant to the tax practitioner and work-product privileges but failed to "substantiate[]" any of its privilege claims and that it provided a deficient and vague privilege log. In addition, the United States claims that the tax practitioner privilege does not apply because the withheld documents reflect communications that had a significant purpose of avoiding taxes.

Valero responded in opposition to the Government's motion.[6] It also moved to quash the Valero summons, seeking an order quashing the summons to the extent it seeks privileged communications and to the extent it seeks information beyond the standards set forth in *United States v. Powell*, 379 U.S. 48, 57–58, 85 S.Ct. 248, 13 L.Ed.2d 112 (1964).[7]

---

[5]*See* Pet. for Enforcement of IRS Summons, Feb. 25, 2008 (Docket Entry No. 1).

[6]Resp. in Opposition to Pet. for Enforcement of IRS Summons, May 12, 2008 (Docket Entry No. 3).

[7]Mot. to Quash [Valero] Summons, May 12, 2008 (Docket Entry No. 4). In *United States v. Powell*, the Supreme Court stated:

> Reading the statutes as we do, the Commissioner need not meet any standard of probable cause to obtain enforcement of his summons, either before or after the three-year statute of limitations on ordinary tax liabilities has expired. He must show that the investigation will be conducted pursuant to a legitimate purpose, that the inquiry may be relevant to the purpose, that the information sought is not already

*The IRS Summons to Arthur Andersen and Litigation in the Northern District of Illinois*

Valero challenged a summons issued to Arthur Andersen in the U.S. District Court for the Northern District of Illinois that was similar to the summonses issued to E&Y and Deloitte.  *See Valero Energy Corp. v. United States*, No. 06 CV 6730, 2007 WL 4179464 (N.D. Ill. Aug. 23, 2007); *Valero v. United States*, No. 06 CV 6730, 2008 WL 4104368 (N.D. Ill. Aug. 26, 2008).  On August 23, 2007, that court granted in part and denied in part Valero's motion to quash two summonses issued by the IRS to Andersen in connection with an IRS investigation that "focused on Valero's potential income tax liability under the Internal Revenue Code and for Valero's possible use of potentially abusive tax shelters" related to the merger and the losses related to the Canadian refinery.  *Valero Energy Corp.*, 2007 WL 4179464 at *1.  The court found that the Government established a prima facie case that the IRS issued the summons in good faith and that Valero did not argue that bad faith or that enforcement of the summons amounted to an abuse of process.  *Id.* at *4. The court declined to quash the summons on the basis that it was vague, overbroad, or failed to meet the requirements of *Powell*, and the court directed Valero to turn over non-privileged documents responsive to the summons.  *Id.* at *5.  The court reviewed several documents Valero claimed were subject to the work product doctrine and ordered the production of some of the documents, *id.* at *6; found that some documents that Valero claimed fell under the tax practitioner privilege satisfied the requirements for the privilege to apply, *id.* at *8; and found that the "tax shelter exception" to the

_____

within the Commissioner's possession, and that the administrative steps required by the Code have been followed-in particular, that the 'Secretary or his delegate,' after investigation, has determined the further examination to be necessary and has notified the taxpayer in writing to that effect.

*Powell*, 379 U.S. at 57–58.

privilege did not apply to the documents in question at that stage of the proceeding, *id.* at *10.

On August 26, 2008, the court issued another order regarding the Andersen summons. *Valero Energy Corp.*, 2008 WL 4104368.[8]  After the court's 2007 ruling, Valero informed the court and the government that Andersen had located additional boxes of potentially responsive documents. *Id.* at *2.  Valero redacted and withheld some of the documents pursuant to the tax practitioner privilege and attorney-client privilege.  After an *in camera* review, the court ordered the disclosure of billing records "only to the extent that [they] reflect[ed] confidential communications between Andersen and Valero or advice Andersen gave," *id.* at *7; ordered the production of fax cover sheets, *id.* at *8; ordered the production of engagement letters, which did not reflect the exchange of confidential communications or tax advice, *id.* at *9; found some remaining documents privileged and others not subject to privilege, *id.* at *7–11.  The court also determined that the tax shelter exception applied to certain communications Valero claimed were privileged.  *Id.* at *18.

On June 17, 2009, the Seventh Circuit Court of Appeals affirmed the decision of the trial court.  *Valero Energy Corp. v. United States*, 569 F.3d 626 (7th Cir. 2009).

### Procedural History

The cases before the Western District of Texas were consolidated on August 27, 2008.[9]  The United States advised the Court of the rulings issued by the District Court in the Northern District of Illinois and opined that the parties would need to brief the Court on collateral estoppel and any

---

[8]The same day, the court declined to reconsider its order on a motion by Valero.  *Valero v. United States*, No. 06 C 6730, 2008 WL 4104367 (N.D. Ill. Aug. 26, 2008).  The court later declined to reconsider its order on a motion by the United States.  *Valero v. United States*, No. 06 C 6730, 2008 WL 4817529 (N.D. Ill. Sept. 19, 2008).

[9]The Court consolidated the cases into *Valero Energy Corp. v. United States*, No. 06-CV-1065.  *See* Order, Aug. 27, 2008 (Docket Entry No. 29).

other effect the rulings would have on these consolidated cases.[10]  The Court then held a status

conference at which the parties debated the effect of the Northern District of Illinois rulings.[11]  The

Court ordered the parties to brief the Court as to Valero's objections to the breadth and scope of the

summonses in question, whether the decisions of the United States District Court for the Northern

District of Illinois bars re-litigation of Valero's objections as to scope, and whether Valero ought to

be entitled to depose IRS Agent Phillip A. Ryder regarding Ryder's declaration supporting the

summonses at issue.[12]  In this Order, the Court considers the arguments presented regarding these

"preliminary" issues.[13]

## Analysis

Valero argues that the Court should sustain its objections to the breadth and scope of the

summonses, the ruling of the U.S. District Court for the Northern District of Illinois does not bar

consideration of Valero's objections under principles of collateral estoppel, and that it should be

allowed to depose Agent Ryder or, alternatively, question him under oath at an evidentiary hearing.

The United States argues that most of Valero's arguments are the same as those in the previous case

---

[10]Notice of Decisions in Related Case, Oct. 6, 2008 (Docket Entry No. 34).

[11]Minute Entry, Oct. 9, 2008 (Docket Entry No. 38).

[12]Hr'g Tr. 36–37, Oct. 9, 2008.

[13]Valero's Br. Regarding Preliminary Matters, Oct. 29, 2008 (Docket Entry No. 39); United States' Br. on Breadth of Summonses & Valero's Request for Deposition, Nov. 12, 2008 (Docket Entry No. 40); Valero's Resp. to the United States' Br. on Breadth of Summonses & Valero's Request for Deposition, Nov. 14, 2008 (Docket Entry No. 42); United States' Reply Br. on Breadth of Summonses & Valero's Request for Deposition, Nov. 14, 2008 (Docket Entry No. 43); Valero's Reply to United States' "Reply Br." on Breadth of Summonses & Valero's Request for Deposition, Nov. 21, 2008 (Docket Entry No. 44); United States' Sur-Reply Br. on Breadth of Summonses & Valero's Request for Deposition, Dec. 8, 2008 (Docket Entry No. 46).

because they concern the same IRS examination, the same language in the summonses, and the summonses are supported by the same declarations and other evidence.  The Government opposes the deposition of Revenue Agent Ryder because discovery in summons enforcement proceedings is limited to extraordinary circumstances, which it claims are not present in this case, and that collateral estoppel may bar the request.

*A.  Collateral Estoppel*

Under collateral estoppel, or issue preclusion, "once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude re-litigation of the issue in a suit on a different cause of action involving a party to the first case."  *Allen v. McCurry*, 449 U.S. 90, 94, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980).  To determine whether collateral estoppel applies, the Court considers whether:

> (1) the issue under consideration is identical to that litigated in the prior action; (2) the issue was fully and vigorously litigated in the prior action; (3) the issue was necessary to support the judgment in the prior case; and (4) there is [any] special circumstance that would make it unfair to apply the doctrine.

*Baros v. Tex. Mexican Ry. Co.*, 400 F.3d 228, 232–33 (5th Cir. 2005) (quoting *Winters v. Shamrock Chem. Co.*, 146 F.3d 387, 391 (5th Cir. 1998)).  Other safeguards include whether the facts and legal standards used to assess them are the same in both proceedings, whether a new determination is warranted by differences in the procedures employed in the two courts, and whether judicial review of the first proceeding was available.  *Id.* at 233.

The issues in this case are identical to the issues litigated in the prior action.  Here, Valero challenges the scope and breadth of the E&Y and Deloitte summonses, arguing that they fail to meet

10

the requirements of *Powell v. United States*.[14]   In the case before the U.S. District Court in the

Northern District of Illinois, Valero challenged the scope and breadth of the Andersen summons,

arguing that it failed to meet the requirements of *Powell*.   In this consolidated case, Valero objects

to the scope and breadth of the E&Y and Deloitte summonses because the Government seeks:

> all documents in connection with Valero's 2001, 2002 and 2003
> income taxes, whereas (a) only the 2002 and 2003 tax returns have
> been the subject of examination; (b) of those two returns, only the
> foreign currenly loss transactions which occurred in 2002 are in
> issue; . . . information in connection with Canadian tax returns and
> Canadian tax issues which are not subject to examination by the
> IRS; . . . "check-the-box information all the way back to 1992,
> without apparent limitation; . . . and . . . "all *other* tax planning, tax
> research, or tax analysis in which Arthur Andersen [*sic*] *played any
> role or provided any services*."[15]

In Valero's petition to quash the Andersen summons before the Northern District of Illinois, Valero

objected to the scope and breadth of the Arthur Andersen summons because the Government sought:

> all documents related to 2001, 2002, 2003 "income taxes" when
> transactions which were consummated in 2002 are the only ones in
> issue; . . . information in connection with Canadian tax returns and
> Canadian tax issues which are not subject to examination by the
> IRS; . . . "check-the-box" information all the way back to 1992,
> without apparent limitation; and  . . . "all *other* tax planning tax
> research, or tax analysis in which Arthur Andersen *played any role or
> provided any services*.[16]

---

[14]To determine the enforceability of a summons, a court determines whether the Government has demonstrated a prima facie case by fulfilling the four factors of *Powell*.  The Government must show (1) the investigation is conducted pursuant to a legitimate purpose; (2) the inquiry is relevant to that purpose; (3) the information sought is not already in the IRS's possession; and (4) the administrative steps have been followed.  *Id.* at 57–58.

[15]Valero's Br. Regarding Preliminary Matters at 4–5.

[16]Am. Pet. to Quash Summons & Mem. of Authorities, *Valero Energy Corp. v. United States*, No. 1:06-CV-6730 (N.D. Ill. Feb. 22, 2007).

The subpoenas in this case seek the same categories of documents regarding the same issues and cover the same time frames.

The district court in the previous proceeding evaluated Valero's arguments, and in applying the factors from *Powell*, determined that the Government established a prima facie case and "decline[d] to quash the amended summons on the basis that it is vague, overbroad, or does not meet the *Powell* requirements." *Valero Energy Corp.*, 2007 WL 4179464, at *4. The court considered the declaration of IRS Agent Ryder in reaching its determination. *Id.* at *3. The court did not find the IRS's investigation to be illegitimate, and it stated that the information sought by the IRS was relevant.

Valero argues that this case has changed since the previous proceeding, claiming that the IRS examination of Valero's tax returns for 2002 and 2003 has concluded. The United States responds that the Government has not concluded its investigation of Valero's tax returns and provides declarations to show that the investigation continues. The information before the Court shows that the investigation continues and that the issuance of any 30-Day Letter that gives notice of a preliminary proposed adjustment does not mean that the IRS has concluded its investigation.[17]

Valero also argues that it would be unfair and bad policy to apply the decision of the previous court. Valero claims that the previous case involved a discovery matter and that Valero made a decision not to challenge scope of the Andersen summons to the extent that it is challenging the summonses in this case. The previous decision considered Valero's petition to quash the summonses issued by the IRS to Andersen. There is no distinction between the nature of the previous case and

_____

[17]Termination of the investigation would render this action moot. Neither party has notified the Court that the investigation has formally terminated.

the case before this Court.  Furthermore, questionable policy would result from accepting Valero's contention that it declined to challenge the Andersen summons with as much effort as it is challenging the nearly identical summonses in this instance.  Valero does not dispute that it was presented the opportunity to fully and fairly litigate its objections; the very same objections it presents in this case.  That Valero did not try harder does not preclude the application of collateral estoppel.

Valero fully and fairly litigated the issue before the Northern District of Illinois; an issue which was necessary to the Court's final determination.  The Court considered Valero's petition to quash the summons, the Government's response to the petition, Valero's objections to the response, and additional briefing by the parties.  The Court held conferences and reviewed documents *in camera*.  The declaration of Agent Ryder was before the Court, which Valero did not challenge.  It is evident that Valero fully and vigorously litigated its overbreadth arguments in the previous case. The district court's evaluation of the *Powell* factors was necessary to the outcome of the previous case as it is here.  Valero objected then, as it does now, that the summonses are overbroad and fail to meet the factors presented in *Powell*.  Moreover, the Court finds no special circumstances that would make it unfair to apply the doctrine of collateral estoppel.

The other factors identified by the Fifth Circuit Court of Appeals also weigh in favor of collateral estoppel.  The factual and legal standards used to reach the court's decision in the Northern District of Illinois are the same in this Court.[18]  Moreover, a petition to quash the summons was

---

[18]The Fifth and Seventh Circuit both characterize the Government's burden in showing its prima facie case as slight.  *See Mazurek v. United States*, 271 F.3d 226, 230 (5th Cir. 2001) ("The burden on the government to produce a prima facie case is 'slight' or 'minimal.'"); *2121 Arlington Heights Corp. v. I.R.S.*, 109 F.3d 1221, 1224 (7th Cir. 1997) ("[T]he government must make a prima facie case that the IRS issued the summons in good faith.  That isn't much of a hurdle." (citations

employed in the previous case as in this one, so there is no significant difference in procedures. Finally, judicial review of the first proceeding was available, as demonstrated by Valero's appeal of the district court's decision to the Seventh Circuit Court of Appeals regarding another issue in the case.

Having evaluated all the factors required to determine if collateral estoppel applies, the Court concludes that Valero is precluded from reasserting that the summonses to E&Y and Deloitte are overbroad and fail to meet the requirements of *Powell*.  Valero raised the issue before the U.S. District Court for the Northern District of Illinois, fully and fairly litigated the issue, and the court rendered its decision on this point.

*2. Deposition of Revenue Agent*

Valero seeks to depose IRS Revenue Agent Phillip A. Ryder and/or examine him at an evidentiary hearing with respect to the sworn declarations he submitted in this case.  Ryder, who signed a similar declaration in the case before the Northern District of Illinois, attests to the Government's investigation of tax liabilities and the Government's need for the requested items in the summons.  The Government opposes the deposition, arguing that discovery in a summons enforcement proceedings is generally limited to extraordinary circumstances—of which this is not

---

omitted)).  There is no difference between the standards that would be employed in this proceeding and in the previous proceeding.  *Compare Mazurek*, 271 F.3d at 230 ("[I]f the government meets its burden, we assess whether the opponent of the summons fulfills his "heavy" burden . . . by either undermining the proponent's contentions regarding any of the *Powell* factors or by demonstrating that enforcement of the summons would result in an "abuse" of the court's process."), *with 2121 Arlington Heights Corp.*, 109 F.3d at 1224 ("Because the government met its burden, the ball falls in [the petitioner's] court to show that enforcement of the summons would constitute an abuse of process. . . . by disproving the existence of one of the *Powell* factors or pointing to specific facts suggesting that the IRS issued the summons in bad faith.").

14

one—and that collateral estoppel also bars the deposition since Agent Ryder's declaration went unchallenged in the previous case before the Northern District of Illinois.

The scope of discovery and availability of a hearing is subject to this discretion of this Court. *Mazurek*, 271 F.3d at 234. "[S]ummons enforcement proceedings should be summary in nature and discovery should be limited." *United States v. Stuart*, 489 U.S. 353, 369, 109 S.Ct. 1183, 103 L.Ed.2d 388 (1989) (quoting S. REP. NO. 97-494, vol. 1 at 285 (1982), *as reprinted in* 1982 U.S.C.C.A.N. 1031). There is no requirement that the Court conduct a hearing or permit discovery in each case. *Mazurek*, 271 F.3d at 234 (citing *Hintze v. I.R.S.*, 879 F.2d 121, 126–27 (4th Cir. 1989)). Ultimate issues of responsibility are not decided in these proceedings. *Id.* at 235.[19]

Valero argues that Agent Ryder's declarations are conclusory and fail to comply with the *Powell* factors and that the broad request of the summons exceeds any legitimate purpose. As the Court has already discussed, collateral estoppel prevents Valero from arguing that the summonses are overly broad. As a practical matter, Valero has no basis to depose or cross-examine based on its argument that the summons is overbroad. In any case, Valero seeks to depose Agent Ryder because "many of the requested documents are completely irrelevant to foreign currency losses still questioned by the IRS." How the IRS conducts its investigation, however, is within the discretion of the agency. *See Tiffany Fine Arts, Inc. v. United States*, 469 U.S. 310, 323, 105 S.Ct. 725, 83 L.Ed.2d 678 (1985).

Valero argues that the summons seeks to invade the tax practitioner privilege between Valero

_____

[19]"An appropriate ground for challenge is that the summons was issued in bad faith." *United States v. Harris*, 628 F.2d 875, 879 (5th Cir. 1980). Valero does not allege that the summons was issued in bad faith. The information before the Court does not demonstrate "an improper purpose such as to harass the taxpayer, to force the taxpayer to settle a collateral suit or for the sole purpose of gathering evidence for a criminal prosecution." *Id.*

and E&Y and Deloitte, arguing that Ryder's statements wrongly suggest that there was promotion of a tax shelter scheme. The Government agrees that to the extent that such issues are not barred by collateral estoppel, the submission of declarations is more appropriate than a deposition of Agent Ryder.[20] Valero can protect its rights by asserting privilege and submitting declarations in support of its arguments. Valero's argument to depose Agent Ryder is based on Valero's attempt to assert privilege and not as to whether the summons is issued for an improper purpose.

## Conclusion

Having considered the parties' briefing, it is ORDERED that collateral estoppel applies to Valero's argument that the summons is overbroad. It is further ORDERED that Valero is precluded from deposing or cross examining IRS Agent Phillip A. Ryder. Valero may submit declarations in support of its contention that some documents are subject to the tax-practitioner privilege to the extent that they are not barred by collateral estoppel.

It is so ORDERED.

SIGNED this 7th day of April, 2010.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE

---

[20]The parties' briefing focuses on the collateral estoppel issues regarding Valero's challenge to the summons based on the claim that they are overbroad. The Court notes, however, that the District Court of the Northern District of Illinois examined Valero's arguments based on tax-practitioner privilege, and the Seventh Circuit Court of Appeals affirmed the district court's decision. In light of the previous decision and the application of collateral estoppel to Valero's arguments that the summons is overbroad, the Court is inclined to note that collateral estoppel applies to the substantive arguments regarding Valero's assertion of the tax practitioner privilege. The Court will consider the declaration to the extent that the issues it addresses are not barred by collateral estoppel.